LAW OFFICES OF ROBERT C. MOEST
Robert C. Moest, SBN 62166
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
(310) 915-6628 (voice)
(310) 915-9897 (fax)

Attorneys for Plaintiff
Jimmy Castro

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY CASTRO,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF CERRITOS, a California Municipal Corporation,<br><br>　　　　Defendant.<br>_____ | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES<br><br>DEMAND FOR JURY TRIAL |

INTRODUCTION

1. This is an action for declaratory and injunctive relief and damages brought on behalf of Jimmy Castro, an individual who desires to operate a tattoo business in the City of Cerritos, California.  Plaintiff seeks a declaration that certain sections of the Cerritos Municipal Code restricting tattoo businesses violate the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and Article 1, Section 2 of the California Constitution.  Plaintiff also seeks injunctive relief to prevent the City of Cerritos from enforcing its tattooing ordinance during the pendency of this action.  Finally, plaintiff seeks

damages for the fact that he has been deprived of his constitutional rights and suffered monetary losses by virtue of the denial of his right to operate his constitutionally protected business.

2.  While the degree of constitutional protection afforded tattooing was in some doubt in the past, that uncertainty was laid to rest by the decision of the Ninth Circuit in *Anderson v. City of Hermosa Beach*, 621 F.3d 1051 (9th Cir. 2010).  In a case of first impression for the federal circuit courts, the Ninth Circuit in Anderson ruled that, "The tattoo *itself*, the *process* of tattooing, and even the *business* of tattooing are not expressive conduct but purely expressive activity fully protected by the First Amendment." *Id*. at 1060  (emphasis in original).

3. Responding to *Anderson* in 2023-24, Cerritos enacted a new provision of the Cerritos Municipal Code, Chapter 22.46, "Body Art Business Regulations." While appearing on the surface to permit tattooing, the new Cerritos ordinance confines tattooing to a minuscule fraction of the commercial space in Cerritos. Considerable deference is given to a city's exercise of its zoning power, but Cerritos has gone far beyond what might be viewed as reasonable limits on tattoo businesses. Moreover, the new ordinance requires a conditional use permit, a prior restraint on expression that violates long established First Amendment principles.

## PARTIES

4. Plaintiff Jimmy Castro is an individual resident of the County of Los Angeles, State of California. He desires to operate a high-quality tattoo shop in Cerritos featuring his own custom tattoo designs and designs by other tattoo artists.

5. The City of Cerritos is a California municipal corporation organized in accordance with the laws of California and the Cerritos Municipal Code.  The actions of the City of Cerritos in promulgating and enforcing its ordinances restricting the right to engage in tattooing are done under color of state law within the meaning of 42 U.S.C. § 1983 and the Fourteenth Amendment.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 (federal question) and under 28 U.S.C.§1343 (civil rights).

7. Venue lies in this judicial district under 28 U.S.C. §1391 because the defendant City of Cerritos is located in the Central District of California, Western Division.

## FACTS

8. Before Chapter 22.46 was adopted, tattooing was prohibited in Cerritos. In January 2023, counsel for Mr. Castro wrote to the city manager and city attorney requesting that the ban on tattooing be repealed and that Mr. Castro be allowed immediately to open a tattoo business in a commercial strip mall at 15969 Piuma Avenue, Cerritos California.. The strip mall then housed a guns and ammunition store, Ammo Bros., a uniform store, California Scrubs, a hot tub store, and a construction company, JC Drywall Arte, Inc.

9. More than a year later, Chapter 22.46 was enacted. Cerritos Municipal Code § 22.46.020 defines "Body Art":

> (1) "Body art" is the collective term for any single activity or combination of activities including tattooing, body piercing, branding, or the application of permanent cosmetics. It shall not include activities such as, or similar to, cutting of the skin or subcutaneous tissue, cutting or modification of cartilage or bone, implantation, branding, deep tissue penetration, threading, stapling or any other invasive procedure, whether or not such act would constitute the practice of medicine requiring licensure as a physician. For the purposes of this chapter only, and without any representation regarding the permitting requirements of any other public entity, "body art" encompassed herein shall not include the practice of ear piercing as an accessory use to the sale of earrings and other similar accessories.

10. Section 22.46.020 also defines "body art business" to means "the business of performing body art," and a "body art establishment" to mean "any permanent premises, business, location, or facility, used or operated in whole or in

part as a body art business."

11. Under the new ordinance, body art businesses are allowed only in the industrial commercial-two zone (MC-2). *Id.* § 22.46.030. There is no justification for limiting body art establishments to an industrial zone. Most cities permit tattooing in the same commercial zones open to barber shops, beauty salons, and similar personal services. But Mr. Castro's proposed location happens to fall in that zone, and he was led to believe the new ordinance would permit him to operate there.

12. Chapter 22-46 imposes additional restrictions on body art store locations, set forth in § 22-46-030:

> Body art establishments shall not be located within the following areas:
>
> (a) Within five hundred feet of another body art establishment, a sexually oriented business defined in Chapter 22.45, a business selling alcoholic beverages for off-site consumption, or any impacted use.

13. Although Mr. Castro was led to believe that his location would be permitted under the new code section, he was informed in October that he would not be allowed to open at the Piuma Avenue address. Although there is no location within the City of Cerritos selling alcoholic beverages within 500 feet of his shop, there is a gas station in the City of Norwalk that has a convenience store selling packaged beer and wine. The travel distance from Mr. Castro's shop to the Shell station is close to 1,000 feet, but the air distance is less than 500. The Shell station is not visible from Mr. Castro's location.

14. The MC-2 zone occupies only a small fraction of the available commercial space in Cerritos, and most of it is unsuitable for retail service businesses like that proposed by Mr. Castro. After *Anderson*, tattooing may not be relegated to commercial corners of a city, but must be allowed wherever other businesses of similar land use impact (such as barber shops and beauty salons) are permitted. Several courts have invalidated tattoo zoning laws that are *less*

restrictive than the Cerritos code.

15. Cerritos bears the burden of justifying its ordinance restricting the location of body art businesses. The limitation can be upheld only if the law is narrowly tailored to serve a significant government interest and if it leaves open ample alternative channels of expression. When Cerritos enacted Chapter 22.40, it had no evidence to support the buffer zone between body art establishments and off-premises alcoholic beverage sales. The limitation is not discussed in the staff report and, when inquiry was made at the City Council meeting which adopted the ordinance, the planning staff admitted it had no factual support of the restriction.

16. The Cerritos body art zoning scheme also runs afoul of the First Amendment because *Id.* § 22.46.030 requires that a body art establishment obtain a conditional use permit pursuant to Cerritos Municipal Code Chapter 23.10. This is an independent ground for invalidating the ordinance.

17. The fee to apply for a CUP is presently $2,967, which does not include the preparation of the application and the posting and mailing of notices required by the chapter 23.10.

18. The criteria for granting or denying a CUP are impermissibly vague, and resemble the provisions that have been struck down in numerous cases as imposing a invalid prior restraint on speech. *Id.* § 23.10.210 sets forth the criteria for granting a CUP:

> A conditional use shall not be approved unless it is determined that the criteria specified in the applicable area development plan or land use zone regulations and the following general criteria are met:
>
> (1) The proposed use and development are each consistent with the general plan and the applicable land use zone or area development plan;
>
> (2) The site for the proposed use is adequate in size, shape, topography, accessibility and other physical characteristics to accommodate the proposed use and development in a manner compatible with existing and potential surrounding uses;
>
> (3) The site for the proposed use has adequate access to utilities and other services required for the proposed use;

> (4) The proposed use will be arranged, designed, constructed, operated and maintained so as to be compatible with the intended character of the area and shall not change the essential character of the area from that intended by the general plan and the applicable land use zone or area development plan;
>
> (5) That any adverse effects upon surrounding property of the permitted use thereof are justified by a benefit conferred by the proposed use upon the neighborhood or community as a whole.

Even if an applicant passed through these hurdles, Section 23.10.310 permits to city to impose additional (and unspecified) conditions on the proposed use.

19. The CUP process fails to include the procedural safeguards required for laws licensing speech. To satisfy constitutional requirements, a permit scheme must specify a brief period during which an activity may be precluded, and provide for expeditious judicial review of an adverse decision. Under the Cerritos scheme, there is no deadline for granting or denying a CUP and there is no provision for expeditious judicial review.

20. Cerritos Municipal Code § 1.08.010 makes violation of any provision of the code a misdemeanor, punishable by up to six months in jail and a fine of $1,000. If plaintiff were to operate a tattoo shop in Cerritos under the current provisions of law, each day's operation would be a separate misdemeanor. Plaintiff faces the likelihood not only of misdemeanor prosecution (either for a single violation or for multiple violations), but also civil code enforcement actions.

21. Because of the severe restrictions on tattoo businesses in the City of Cerritos, plaintiff has suffered the loss of rights guaranteed by the Free Speech Clause of the First Amendment and by Article 1, section 2 of the California constitution, all to his damage in an amount to be proved at trial. .

///

///

///

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF–VIOLATION OF 42 U.S.C. § 1983

22. Plaintiff incorporates paragraphs 1 through 15 by reference.

23. By virtue of the severe on tattoo businesses in the City of Cerritos, plaintiff has been deprived of rights under the First and Fourteenth Amendments, in violation of 42 U.S.C. § 1983.

24. Because tattooing is permitted in the City of Cerritos only pursuant to a conditional use permit, the Cerritos zoning scheme acts as an unconstitutional prior restraint on speech, subjecting the right to expression to the excessive discretion of municipal officials.

25. Because tattooing is permitted by the City of Cerritos only pursuant to a conditional use permit, and because the conditional use permit scheme fails to set reasonable time limits within which Cerritos must grant or deny the conditional use permit, the zoning scheme carries the potential of suppressing speech, rendering it invalid under the First Amendment.

26. Because the areas where tattoo businesses are allowed exclude virtually all commercial areas of the city, the Cerritos scheme violates the First Amendment and 42 U.S.C. § 1983. While considerable discretion is afforded municipalities in allocating uses among various zones, the locations available for businesses protected by the First Amendment may not be a matter of municipal whim. The location and buffer zone limitations on tattoo businesses must be analyzed according to the well-established rules for evaluating time, place and manner restrictions of speech, which will be upheld only if they: (1) are content neutral; (2) are narrowly tailored to serve a significant governmental interest; *and* (3) leave open ample alternative channels of communication. Cerritos bears the burden of justification. Because the zoning scheme fails to satisfy any of these three prongs, it is unconstitutional.

## SECOND CLAIM FOR RELIEF–VIOLATION OF ARTICLE 1, SECTION 2, OF THE CALIFORNIA CONSTITUTION

27. Plaintiff incorporates paragraphs 1 through 15 by reference.

28. Article 1, section 2 of the California Constitution provides, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

29. The ban on tattoo business in the City of Cerritos violates article 1, section 2.

## IRREPARABLE INJURY/ACTUAL CONTROVERSY

30. There is between the parties an actual controversy as set forth herein. The plaintiff is suffering irreparable injury and is threatened with irreparable harm in the future by reason of the acts alleged herein, inasmuch as a substantial loss or impairment of freedom of expression has occurred and will continue to occur so long as the cited Cerritos Municipal Code sections remain in force.  Plaintiff will be harassed, intimidated, cited, arrested, or prosecuted by the defendant, or its agents, if He attempts to exercise constitutional rights concerning tattooing in the City of Cerritos.

31. Plaintiff has no plain, adequate, or complete remedy to speedily redress the wrongs complained of herein other than this action.  Any other remedy to which plaintiff could be remitted would be attended by such uncertainties and delays that it would cause further irreparable injury, damage, and inconvenience to him.  Damages are not adequate to protect plaintiff from the continuing effects of abridgment of the exercise of his First and Fourteenth Amendment rights, and free speech rights protected by the California constitution.

///

///

///

# PRAYER

WHEREFORE, Plaintiff prays:

1. That Cerritos Code regulations of tattoo businesses be declared unconstitutional under the federal and California constitutions, insofar as they are applied to prohibit plaintiff from operating a tattoo business in the City of Cerritos.

2. That the City of Cerritos be preliminarily and permanently enjoined from enforcing Chapter insofar as it prohibits plaintiff from operating a tattoo business in the City of Cerritos.

3. That plaintiff be awarded damages for loss of his rights under the Free Speech Clause of the First Amendment.

4. That plaintiff be awarded damages for loss of his rights under Article 1, section 2 of the California constitution.

5. That plaintiff be awarded damages for being deprived of the opportunity to conduct a tattoo establishment in the City of Cerritos

6. That plaintiff be awarded reasonable attorney's fees and expenses of counsel pursuant to 42 U.S.C. §1988;

7. That plaintiff be awarded reasonable attorney's fees and expenses of counsel pursuant to Cal. Code Civ. Proc. 1021.5.

8. For costs of suit; and

9. For such other and further relief as the court may deem just and proper.

Dated: October 27, 2024                RESPECTFULLY SUBMITTED,

                                                   LAW OFFICES OF ROBERT C. MOEST
Robert C. Moest

By: /s Robert C. Moest
            Robert C. Moest
Attorneys for Plaintiff
Jimmy Castro

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Jimmy Castro demands a jury trial as provided by Fed. R. Civ. P. 38.

Dated: October 27, 2024                RESPECTFULLY SUBMITTED,

LAW OFFICES OF ROBERT C. MOEST
Robert C. Moest

By: /s/ *Robert C. Moest*

Robert C. Moest
Attorneys for Plaintiff
Jimmy Castro